# Exhibit A

1  FRANK SIMS & STOLPER LLP
   Jason M. Frank (SBN 190957)
2  jfrank@lawfss.com
   Scott H. Sims (SBN 234148)
3  ssims@lawfss.com
   19800 MacArthur Blvd., Suite 855
4  Irvine, California 92612
   Telephone:   (949) 201-2400
5  Facsimile:   (949) 201-2405

6  Attorneys for Plaintiffs

7  [Defense Counsel's information listed on
   next page]
8

9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12

13
   PAMELA RUBIN-KNUDSEN, an          Case No.:  2:18-cv-06227-JGB-SPx
14 individual; and MARNINE
   CASILLAS, an individual on behalf
15 of themselves, and all other persons
   similarly situated,                STIPULATION OF CLASS AND
16                                     REPRESENTATIVE ACTION
                     Plaintiffs,      SETTLEMENT
17
   vs.                                Complaint Filed:   July 18, 2018
18                                     SAC Filed:         January 15, 2019
   ARTHUR J. GALLAGHER & CO.,         Trial Date:        March 2, 2021
19 a Delaware corporation, ARTHUR J.
   GALLAGHER SERVICE
20 COMPANY, LLC, a limited liability
   company,
21
                     Defendants.
22

23

24

25

26

27

28

JOAN B. TUCKER FIFE (SBN: 144572)
jfife@winston.com
GABRIELLA R. ALBRIGHT (SBN: 326201)
galbright@winston.com
**WINSTON & STRAWN LLP**
101 California Street, 35th Floor
San Francisco, CA 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

EMILIE C. WOODHEAD (SBN: 240464)
ewoodhead@winston.com
CAITLIN W. TRAN (SBN: 305626)
cwtran@winston.com
**WINSTON & STRAWN LLP**
333 S. Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

STEPHEN V. D'AMORE (admitted *pro hac vice*)
sdamore@winston.com
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, IL 60601-9703
Telephone: (312) 558-5600
Facsimile:  (312) 558-5700

Attorneys for Defendants

1

## I.   **INTRODUCTION**

2      1.      This Stipulation of Class and Representative Action Settlement and

3  Release (hereinafter "Settlement Agreement") is made and entered into by and

4  between the following Parties: Plaintiffs Pamela Rubin-Knudsen and Marnine

5  Casillas ("Plaintiffs"), individually and on behalf of all Class Members and

6  Defendants Arthur J. Gallagher & Co. and Arthur J. Gallagher Service Company,

7  LLC ("Defendants") (collectively, the "Parties"), through their respective counsel of

8  record.

9      2.      This Settlement Agreement is subject to the terms and conditions set

10 forth below and to the approval of the Court. This Settlement Agreement sets forth

11 the Parties' class and representative action settlement to resolve all of the claims

12 asserted in the Action and/or claims that could have been alleged in the Action based

13 on the facts alleged in the Complaints. As detailed below, if the Court does not enter

14 an order granting Final Approval of Settlement, or if the associated judgment does

15 not become final for any reason, this Settlement Agreement shall be deemed null and

16 void and shall be of no force or effect whatsoever.

17

## II.   **DEFINITIONS**

18      3.      The following definitions are applicable to this Settlement Agreement.

19 Definitions contained elsewhere in this Settlement Agreement also shall be

20 applicable.

21      4.      "Action" means the lawsuit captioned above.

22      5.      "Class Counsel" means Frank Sims Stolper, LLP, Jason M. Frank and

23 Scott H. Sims.

24      6.      "Class Counsel Award" means the total amount to be paid to Class

25 Counsel, including Class Counsel Fees and Class Counsel Expenses.

26      7.      "Class Counsel Expenses" means the amount of reasonable litigation

27 expenses Class Counsel actually incurred in connection with this Action, not to

28 exceed $150,000.00, including their pre-filing investigation, their filing of the

Action and all related litigation activities, this Settlement, and all post-Settlement compliance procedures.

8.    "Class Counsel Fees" means an amount not to exceed $2,666,667.00 (33% of the Gross Settlement Amount) to compensate Class Counsel for their attorneys' fees incurred in connection with the Action, including their pre-filing investigation, their filing of the Action and all related litigation activities, this Settlement, and all post-Settlement compliance procedures.

9.    "Class Information" means information regarding Class Members that Defendants will in good faith compile from its Human Resources electronic records and provide only to the Settlement Administrator in a secure manner on a confidential basis. The Class Information shall include each Class Member's full name; last known mailing address to the extent available in Defendants' electronic business records; Social Security Number; and number of Qualifying Workweeks.

10.    "Class" or "Class Members" means all current and former Client Service Managers, Client Service Manager Seniors, Client Service Manager IIs, and Client Service Manager IIIs (collectively, a "Client Service Manager Position"), employed by either or both Defendants in the State of California at any time during the Class Period, and who were classified as exempt from state and federal overtime compensation requirements while in a Client Service Manager Position at any time during the Class Period.

11.    "Class Period" means the period from July 18, 2014 through the earlier of the date of Preliminary Approval or December 31, 2020.

12.    "Class Representative Enhancement" means the amount to be paid to Plaintiffs in recognition of their efforts and work in prosecuting the Action on behalf of Class Members. Defendants agree to pay a Class Representative Enhancement of up to $25,000.00, consisting of up to $15,000.00 to Plaintiff Rubin-Knudsen and up to $10,000.00 to Plaintiff Casillas, subject to the Court finally approving this Settlement Agreement and subject to the exhaustion of any and all appeals. Any

portion of the Class Representative Enhancement not awarded to Plaintiffs will not revert to Defendants, but instead shall be returned to the Net Fund Value for distribution to Participating Class Members.

13.    "Client Service Manager Position" shall have the meaning set forth in Paragraph 10 of this Settlement Agreement.

14.    "Complaints" means the initial pleading filed in the United States District Court, Central District of California, Case No. 2:18-cv-06227-JGB-SP, on July 18, 2018, the First Amended Complaint, filed on August 29, 2018, and the operative Second Amended Complaint, filed on January 25, 2019.[1]

15.    "Court" means the United States District Court for the Central District of California.

16.    "Defendants" means Arthur J. Gallagher & Co. and/or Arthur J. Gallagher Service Company, LLC.

17.    "Defendant's Counsel" means Winston & Strawn LLP.

18.    "Effective Date" means the latter of: (a) if no appeal is filed, 30 days after both Final Approval of the Settlement and entry of judgment; or (b) if an appeal of the Final Approval is filed, the date on which the Court of Appeals or Supreme Court renders a final judgment affirming the trial court's Final Approval.

19.    "Final Approval" means the Court order granting final approval of the Settlement Agreement.

20.    "Gross Settlement Amount" means the maximum amount of $8,000,000.00 to be paid by Defendants under this Settlement Agreement (subject to Final Approval and exhaustion of any and all appeals) to settle the Action, inclusive of the total settlement value for all damages, restitution, penalties, taxes and interest, all payments to Participating Class Members (including employee-side taxes), the Class Counsel Award, Settlement Administration Costs to the Settlement

[1] All Complaints and the PAGA Notice will be accessible to Class Members via the Settlement Administrator's website at CSM-Settlement.com.

Administrator, PAGA Payment, and the Class Representative Enhancement to Plaintiff. The Gross Settlement Amount shall also include any interest that accrues in the escrow account created by the Settlement Administrator. The Gross Settlement Amount may increase pursuant to the terms set forth in Paragraph 74 below.

21.    "Individual Settlement Share" means each Class Member's share of the Net Fund Value calculated in accordance with the calculations described in Paragraph 66. Payment of an Individual Settlement Share shall be referred to as an "Individual Settlement Payment."

22.    "Net Fund Value" means the portion of the Gross Settlement Amount remaining after deduction of the: (1) Class Representative Enhancement to Plaintiffs, (2) Settlement Administration Costs to the Settlement Administrator, (3) Class Counsel Award, and (4) PAGA Payment. The Net Fund Value will be distributed to Participating Class Members.

23.    "Notice of Settlement" or "Notices of Settlement" means the notice (substantially in the form attached hereto as **Exhibit A**) that the Court orders to be sent to all Class Members advising them of their rights under this Settlement Agreement.

24.    "PAGA Payment" means an amount of up to $10,000.00, the amount attributable to Plaintiffs' claims pursuant to the California Private Attorneys General Act of 2004, Cal. Labor Code § 2698 *et seq.* ("PAGA"). Pursuant to the PAGA, seventy-five percent (75%) – i.e., $7,500.00 – of this amount shall be paid to the LWDA and twenty-five percent (25%) – i.e., $2,500.00 – shall be distributed to all PAGA Representative Class Members on a per capita basis.

25.    "PAGA Representative Class Members" means all current and former Client Service Managers, Client Service Manager Seniors, Client Service Manager IIs, and Client Service Manager IIIs (collectively, a "Client Service Manager Position"), employed by either or both Defendants in the State of California at any time during the PAGA Representative Class Period, and who were classified as

exempt from state and federal overtime compensation requirements while in a Client Service Manager Position at any time during the PAGA Representative Class Period.

26.    "PAGA Representative Class Period" means the period from July 18, 2017 through the earlier of the date of Preliminary Approval or December 31, 2020.

27.    "PAGA Settlement Share" means each PAGA Representative Class Member's share of 25 percent of the PAGA Payment, calculated in accordance with the calculations described in Paragraph 68. Payment of a PAGA Settlement Share shall be referred to as a "PAGA Settlement Payment."

28.    "Participating Class" or "Participating Class Members" means all Class Members who do not submit a valid letter requesting to be excluded from the Settlement (*i.e.,* opt-out), consistent with the terms set forth in this Settlement Agreement.

29.    "Parties" means Plaintiffs and Defendants, collectively, and "Party" shall mean either Plaintiffs or Defendants, individually.

30.    "Plaintiffs" means the named Plaintiffs in the Action, Pamela Rubin-Knudsen and Marnine Casillas.

31.    "Preliminary Approval" means the Court order granting preliminary approval of the Settlement Agreement without material change to the Settlement Agreement.

32.    "Qualified Settlement Account" means the account established by the Settlement Administrator, into which the Gross Settlement Amount shall be deposited.

33.    "Qualifying Workweeks" means the number of weeks in which a Class Member was employed by, and performed work for, either or both Defendants, in California in an exempt-classified Client Service Manager Position during the Class Period. Each Qualifying Workweek runs from Sunday to Saturday.

34.    "Released Class Claims" shall have the meaning set forth in Paragraph 75 of this Settlement Agreement.

35.   "Released PAGA Claims" shall have the meaning set forth in Paragraph 76 of this Settlement Agreement.

36.   "Response Deadline" means the date forty-five (45) calendar days after the Settlement Administrator mails the Notice of Settlement to Class Members and the last date on which Class Members may: (a) postmark written requests to be excluded from this Settlement, or (b) file a Notice of Objection to the Settlement with the Court and serve on counsel for the Parties. If the 45th day falls on a Sunday or federal holiday, the Response Deadline will be extended to the next day on which the U.S. Postal Service is open.

37.   "Settlement" means the Parties' agreement to compromise the Action, the material terms of which are set forth in this Settlement Agreement.

38.   "Settlement Administrator" means Atticus Administration, LLC.

39.   "Settlement Administration Costs" means the expense payable from the Gross Settlement Amount to the Settlement Administrator for administering this Settlement, including, but not limited to, creating and maintaining a settlement website, mailing Notices of Settlement to the Class Members, calculating weeks of employment from the Class Information, printing, distributing, and tracking forms for this Settlement, tax reporting, distributing the Net Fund Value, Class Counsel Award, and PAGA Payment, providing necessary reports and declarations, as requested by the Parties, and sending CAFA notice pursuant to 28 U.S.C. § 1715. The Settlement Administration Costs are estimated to be up to $15,000.00. Any portion of the Settlement Administration Costs that are not used or which are not awarded by the Court will not revert to Defendants, but instead will be part of the Net Fund Value for distribution to Participating Class Members. If the Settlement Administration Costs exceed $15,000.00, such cost will be deducted from the Net Fund Value.

40.   "Settlement Agreement" means this Stipulation of Class and Representative Action Settlement and Release.

# III.   RECITALS

41.   <u>Procedural History</u>. Plaintiffs were employed by Defendants in California in exempt Client Service Manager Positions. Plaintiffs, represented by Frank Sims Stolper, LLP, filed this Action on July 18, 2018 in the United States District Court, Central District of California. The operative Second Amended Complaint, filed January 25, 2019, is on behalf of "[a]ll persons who are or were previously employed by Defendants as Client Service Managers in California and were classified as exempt from overtime wages." With respect to the claim under California's Unfair Competition Law, the class period is four (4) years prior to the filing of the action; with respect to the rest of the claims, the class period is three (3) years prior to the filing of the action. Plaintiffs' Second Amended Complaint includes claims for: (1) failure to pay overtime compensation; (2) failure to provide off-duty meal periods; (3) failure to provide accurate wage statements; (4) failure to pay wages due at termination; (5) violation of California's unfair competition law; and (6) violation of California's Private Attorneys General Act ("PAGA").

42.   <u>Mediation</u>. The Parties participated in two private mediations with Deborah Saxe, Esq. at JAMS, an experienced and neutral mediator specializing in employment and wage and hour mediations, on July 2, 2019 and September 4, 2020. The Parties then had multiple follow-up settlement telephone conferences with the Mediator between September 4, 2020 and September 22, 2020.

43.   <u>Benefits of Settlement to Class Members</u>. Plaintiffs and Class Counsel recognize the expense and length of continued proceedings necessary to litigate their disputes through class certification, trial, and through any possible appeals. Plaintiffs and Class Counsel have also taken into account the uncertainty and risk of the outcome of further litigation, and the difficulties and delays inherent in such litigation. Plaintiffs and Class Counsel are also aware of the burdens of proof necessary to establish liability for the claims asserted in the Action, both generally and in response to Defendants' defenses thereto, and the difficulties in establishing

liability and damages for the Class Members. Plaintiffs and Class Counsel have also taken into account the extensive settlement negotiations conducted. Further, Plaintiffs and Class Counsel have taken into account Defendants' agreement to enter into a settlement that confers substantial relief upon the Class Members. Based on the foregoing, Plaintiffs and Class Counsel have determined that the Settlement set forth in this Settlement Agreement is a fair, adequate, and reasonable settlement, and is in the best interests of the Class Members.

44.     <u>Defendants' Reasons for Settlement</u>. Defendants have concluded that any further defense of this litigation would be protracted and expensive for all Parties. Unless this Settlement is made, Defendants will devote substantial amounts of time, energy, and resources to the defense of the claims asserted by Plaintiffs. Defendants have also taken into account the risks of further litigation in reaching their decision to enter into this Settlement. Despite continuing to contend that they are not liable for any of the claims set forth by Plaintiffs, Defendants have, nonetheless, agreed to settle in the manner and upon the terms set forth in this Agreement to put to rest the claims as set forth in the Action. Defendants claim and continue to claim that the Action and Released Class Claims and Released PAGA Claims have no merit and do not give rise to liability. This Agreement is a compromise of disputed claims. Nothing contained in this Agreement, no documents referred to herein, and no action taken to carry out this Agreement may be construed or used as an admission by or against Defendants as to the merits or lack thereof of the claims asserted.

## IV.    <u>DUTIES OF THE PARTIES PRIOR TO PRELIMINARY APPROVAL AND BETWEEN PRELIMINARY AND FINAL APPROVAL</u>

45.     Promptly after execution of this Settlement Agreement, Plaintiffs shall move the Court for Preliminary Approval of the Settlement and request entry of an order accomplishing the following: (a) preliminarily approving the Settlement; (b) approving as to form and content the proposed Notice of Settlement; (c) directing

the mailing of the Notice of Settlement; (d) preliminarily appointing Plaintiffs and

Class Counsel as representatives of the Class Members; (e) preliminarily approving

the application for Class Counsel Fees and Class Counsel Expenses payable to Class

Counsel; (f) preliminarily approving the Class Representative Enhancement to

Plaintiffs; (g) preliminarily approving the PAGA Payment; (h) preliminarily

approving settlement administration services to be provided by the Settlement

Administrator, and its estimated fees and costs of $15,000.00 and (i) scheduling the

Final Approval hearing, which is a fairness hearing on the question of whether the

proposed Settlement Agreement should be finally approved as fair, reasonable, and

adequate as to the Class Members.

46.     The Parties shall submit this Settlement Agreement in support of

Plaintiffs' unopposed motion for Preliminary Approval of the Settlement. Plaintiffs

shall not file the unopposed motion for Preliminary Approval or any other

documents related to seeking Court approval of the Settlement without first

providing a draft of the pleading to Defendants' Counsel and providing Defendants'

Counsel with the opportunity to review, comment and propose changes.

47.     At the same time that Plaintiffs file the Motion for Preliminary

Approval, Plaintiffs shall also submit to the LWDA a copy of the proposed

Settlement pursuant to Labor Code § 2699. Class Counsel shall draft the Motion for

Preliminary Approval and shall provide the draft of the motion to Defendants'

Counsel at least seven (7) calendar days before filing the motion with the Court, and

Defendants' counsel will provide any comments or proposed changes within four (4)

calendar days thereafter.

48.     Class Counsel will file a motion for Final Approval of the Settlement

and supporting documents with the Court at least twenty-eight (28) calendar days

prior to Final Approval hearing. Supporting documents include: (a) a declaration by

the Settlement Administrator of due diligence and proof of mailing of the Notice of

Settlement required to be mailed to Class Members by this Settlement Agreement,

and of the delivery results of the Settlement Administrator's mailings including tracing and re-mailing efforts; (b) a proposed order granting Final Approval; and (c) a proposed final judgment. Seven (7) calendar days prior to filing for Final Approval, Class Counsel will send Defendants' Counsel the motion for Final Approval of the Settlement for review, comments, and proposed changes, and Defendants' counsel will provide any comments or proposed changes within four (4) calendar days thereafter. The Parties will meet and confer and agree upon the proposed order granting Final Approval and the proposed final judgment. If the parties are unable to reach agreement on the proposed order granting Final Approval and/or the proposed final judgment the parties will lodge their respective versions with the Court.

49.   Defendants will not oppose Final Approval of the Settlement if it does not void or revoke the Settlement Agreement pursuant to Paragraph 73 and so long as it is consistent with the terms set forth in this Settlement Agreement.

50.   As described in Paragraph 48, Class Counsel will submit a proposed order for Final Approval and a proposed judgment. The proposed order shall include the following findings and orders: (a) approving the Settlement, adjudging the terms thereof to be fair, reasonable and adequate, and directing that its terms and provisions be carried out; (b) approving the payment of the Class Representative Enhancement award to Plaintiffs; (c) approving Class Counsel's application for Class Counsel Fees and Class Counsel Expenses; (d) approving the PAGA Payment; and (e) providing that the Court will retain jurisdiction to oversee administration and enforcement of the terms of the Settlement and the Court's orders.

## V.   **DUTIES OF THE PARTIES AFTER FINAL COURT APPROVAL**

51.   Following entry of the Court's Final Approval of the Settlement Agreement and entry of judgment, the Parties will each act to assure their timely execution and the fulfillment of all their provisions, including but not limited to the following:

a.   Should an appeal be taken from the Final Approval of the Settlement Agreement, all Parties will support the Final Approval order on appeal.

b.   Defendants' Counsel will reasonably assist the Settlement Administrator as needed or requested in the process of identifying and locating Class Members entitled to payments from the Gross Settlement Amount.

c.   Class Counsel will ensure that the Settlement Administrator will certify to the Court completion of all payments required to be made by this Settlement Agreement.

## VI.   TERMS OF AGREEMENT

Plaintiffs, on behalf of themselves and the Participating Class Members, and Defendants agree as follows:

52.   Terms of Agreement Subject to Court Approval. All terms set forth in this Settlement Agreement are subject to Court approval. The Parties stipulate to class certification only for purposes of the Settlement. Plaintiffs shall apply to the Court for approval of the Settlement Agreement and for class certification solely for purposes of effectuating this Settlement. Defendants shall not oppose this application. If, for any reason, the Settlement is not approved, the stipulation to certification will be void. The Parties further agree that certification for purposes of the Settlement is not an admission that class certification is proper under the standard applied to contested certification motions and that this Settlement will not be admissible in this, or any other, legal process as evidence that (i) a class should be certified or (ii) Defendants are liable to Plaintiffs or any of the Class Members.

53.   Retention of Settlement Administrator. The parties will retain Atticus Administration, LLC as the Settlement Administrator, who shall be responsible for administration of this Settlement.

54.   Settlement Administration Costs. The Settlement Administrator shall be paid for the costs of administration of the Settlement and distribution of all payments

from the Gross Settlement Amount. The estimate of the Settlement Administration Costs is $15,000.00. These costs, which shall be paid from the Gross Settlement Amount, shall be used to administer the settlement, including, *inter alia*, creating and maintaining a settlement website, preparing the required tax reporting on Individual Settlement Payments, issuing 1099 and W-2 IRS Forms, distributing the Notice of Settlement, calculating Individual Settlement Payments, calculating PAGA Settlement Payments, processing exclusion requests, resolving disputes, distributing the Net Fund Value as directed by the Court and as set forth herein, providing necessary reports and declarations, and sending CAFA notice pursuant to 28 U.S.C. § 1715. No fewer than ten (10) calendar days prior to the Final Approval hearing, the Settlement Administrator shall provide the Court and all counsel for the Parties with a statement detailing the Settlement Administration Costs. The Parties agree to cooperate in the settlement administration process and to make all reasonable efforts to control and minimize the costs and expenses incurred in the administration of the Settlement. An IRS Form 1099 shall be issued to the Settlement Administrator.

55.    <u>Funding of the Class Settlement Amount</u>. Defendants shall make a one-time deposit of the Gross Settlement Amount into a Qualified Settlement Account to be established by the Settlement Administrator. The funds in the Qualified Settlement Account shall be used to pay: (1) Individual Settlement Payments; (2) the PAGA Payment; (3) the award of Class Counsel Fees and Class Counsel Expenses; (4) the Class Representative Enhancement payments; (5) Settlement Administration Costs; and (6) all employee's withholdings and taxes associated with the wage-portion of Individual Settlement Shares. Defendants shall deposit the Gross Settlement Amount within fifteen (15) calendar days of the Effective Date.

56.    <u>Class Representative Enhancement</u>. In exchange for a general release, and in recognition of their efforts and work in prosecuting the Action on behalf of Class Members, Defendants agree not to oppose any application or motion for Class Representative Enhancement payments to Plaintiff Rubin-Knudsen of up to

$15,000.00 and to Plaintiff Casillas of up to $10,000.00. The Class Representative Enhancement payments, which shall be paid from the Gross Settlement Amount, shall be in addition to Plaintiffs' Individual Settlement Payments paid pursuant to the Settlement. The Settlement Administrator shall issue an IRS Form 1099 for the Class Representative Enhancement payments. Plaintiffs shall be solely and legally responsible to pay any and all applicable taxes on the payments made pursuant to this Paragraph and shall hold Defendants harmless from any claim or liability for taxes, penalties, or interest arising as a result of the payments. Any reduction in the amount of the Class Representative Enhancement payments by the Court will not revert to Defendants, but shall be returned to the Net Fund Value to be distributed to Participating Class Members.

57.    Payment of Class Counsel Award. Defendants agree not to oppose any application or motion by Class Counsel for an award of Class Counsel Fees not to exceed $2,666,667.00, and Class Counsel Expenses not to exceed $150,000.00. The Class Counsel Award shall be paid out of the Gross Settlement Amount. Any portion of the Class Counsel Award not awarded to Class Counsel will not revert to Defendants, but instead shall be returned to the Net Fund Value for distribution to Participating Class Members. Class Counsel shall be solely and legally responsible to pay all applicable taxes on the payment made pursuant to this Paragraph. IRS Form 1099 shall be provided to Class Counsel for the payments made pursuant to this Paragraph.

58.    PAGA Payment. Subject to Court approval, $10,000.00 from the Gross Settlement Amount shall be designated for satisfaction of Plaintiffs' and PAGA Representative Class Members' claims pursuant to the PAGA. Pursuant to the PAGA, seventy-five percent (75%) – i.e., $7,500.00 – of this amount shall be paid to the LWDA and twenty-five percent (25%) – i.e., $2,500.00 – shall be evenly distributed to PAGA Representative Class Members as PAGA Settlement Payments on a per capita basis. If the PAGA Payment is adjusted by the Court, it shall be

adjusted by using funds from the Gross Settlement Amount and in no event shall increase the Gross Settlement Amount.

59.    Net Fund Value. The Net Fund Value shall be available for distribution to Participating Class Members in accordance with the notice procedure and formula set forth in this Settlement Agreement.

60.    Notice Procedure. The Settlement Administrator shall be responsible for the following notice procedure.

        a.    Delivery of the Class Information. Within fourteen (14) calendar days after Preliminary Approval, Defendants shall provide the Class Information to only the Settlement Administrator. The Class Information shall remain confidential and shall not be disclosed to anyone, except to carry out reasonable efforts described below, or pursuant to express written authorization by Defendants.

        b.    Notice by First-Class U.S. Mail. Within fourteen (14) calendar days of receiving the Class Information, the Settlement Administrator shall send the Notice of Settlement to all Class Members via regular First Class U.S. Mail, using the most current mailing addresses identified in the Class Information as updated using the National Change of Address Database.

        c.    Undeliverable Notices. Any Notices of Settlement returned to the Settlement Administrator as non-delivered on or before the Response Deadline shall be sent to the forwarding address affixed thereto. If no forwarding address is provided, the Settlement Administrator shall promptly attempt to determine a correct address using a skip-trace, or other search using the name, address and/or Social Security number of the Class Member involved, and shall re-mail the Notice of Settlement. If, after performing a skip-trace search, the Notice of Settlement is still returned to the Settlement Administrator as non-deliverable, the Settlement Administrator will have no further obligation to undertake efforts to obtain an alternative address.

61.    <u>Request for Exclusion Procedure</u>. The Notice of Settlement shall provide Members with instructions on how to exclude themselves, or "opt-out," in part, from the class action (i.e., non-PAGA) portion of this Settlement.

a.    Class Members who wish to opt-out of the class action portion of this Settlement shall notify the Settlement Administrator in writing that they want to exclude themselves, *i.e.*, opt-out, from the class action Settlement. The request to opt-out sent to the Settlement Administrator must be postmarked no later than the Response Deadline. Class Members shall be permitted to rescind their opt-out statements in writing by submitting a rescission statement to the Settlement Administrator not later than one (1) business day before the Court's Final Approval hearing, orally at the Final Approval hearing, or as otherwise ordered by the Court.

b.    The proposed order granting Preliminary Approval of the Settlement will provide, and the Notice of Settlement will instruct Class Members, that, to be valid, a written request to opt-out of the class action Settlement Agreement must include the Class Member's name, address, and signature and state the following: I wish to opt-out of the class action settlement of the lawsuit *Rubin-Knudsen et al. v. Arthur J. Gallagher & Co., et al.,* United States District Court for the Central District of California, Case No. 2:18-cv-06227-JGB-SP. I understand that by requesting exclusion, I will not be eligible to receive any payment or other benefit for Class Members from the class action settlement involving Arthur J. Gallagher & Co. and Arthur J. Gallagher Service Company, LLC.

c.    A Class Member who does not properly and timely submit a request to opt-out of the class action Settlement in the manner and by the deadline specified above will automatically receive his or her Individual Settlement Share in addition to his or her PAGA Settlement Share and will be bound by all terms and conditions of the Settlement Agreement, including its

1   release of the Released Class Claims and Released PAGA Claims, if the

2   Settlement Agreement is approved by the Court, and be bound by the Final

3   Approval order, regardless of whether he or she has objected to the Settlement

4   Agreement.

5            d.      A Class Member who properly and timely submits a request to

6   opt-out of the Settlement Agreement will not be entitled to any Individual

7   Settlement Share; will not release the Released Class Claims; will receive a

8   PAGA Settlement Share; will release the Released PAGA Claims; will not be

9   bound by the terms of the Settlement Agreement (except the release of claims

10  under the PAGA); and will not have any right to object, appeal, or comment

11  thereon.

12           e.      Counsel for the Parties shall not discourage any Class Member

13  from participating in, objecting to, or opting out of the Settlement.

14       62.    <u>Objections</u>. For a Class Member to object to the Settlement Agreement,

15  a Class Member must file with the Court by the Response Deadline a notice of

16  objection, signed by the Class Member, stating: (i) the Class Member's name;

17  (ii) current address; (iii) telephone number; (iv) dates of employment with

18  Defendants; (v) last 4-digits of his or her Social Security number; and (vi) the basis

19  of the objection, including the reasons why the objector believes that the Court

20  should find that the proposed Settlement is not in the best interests of the Class and

21  the reasons why the Settlement should not be approved. The Class Member must

22  serve a copy of his or her objection on Counsel for the Parties by the Response

23  Deadline. The postmark date of the filing and service shall be deemed the exclusive

24  means for determining that the notice of objection is timely. Class Members who fail

25  to make and mail written objections in the manner and by the deadline specified

26  above shall be deemed to have waived any objections and shall be foreclosed from

27  making any objections (whether by appeal or otherwise) to the Settlement. Class

28  Members shall be permitted to withdraw their objections in writing by submitting a

withdrawal statement to the Settlement Administrator not later than one (1) business day before the Court's Final Approval hearing, orally at the Final Approval hearing, or as otherwise ordered by the Court. A Class Member who files and serves a timely notice of objection will have a right to appear at the Final Approval hearing to have his or her objection heard by the Court.

63.   Disputed Information on Notice of Settlement. Each Class Member shall have an opportunity to dispute the employment dates and number of Qualifying Workweeks attributed to him or her in the Notice of Settlement, and must submit such a dispute on or before the Response Deadline. To the extent a Class Member disputes the employment dates or number of Qualifying Workweeks listed in the Notice of Settlement, the Class Member may produce evidence to the Settlement Administrator showing that such information is inaccurate. Absent evidence rebutting Defendants' records, Defendants' records will be presumed determinative. However, if a Class Member produces evidence to the contrary, the Parties will evaluate the evidence submitted by the Class Member and will make the decision as to the number of eligible Workweeks that should be applied, subject to the procedures set forth in Paragraph 66 below.

64.   The Settlement Terms Bind All Class Members Who Do Not Opt-Out. Any Class Member who does not affirmatively opt-out of the Settlement Agreement by submitting a timely and valid letter requesting exclusion from the Settlement, consistent with the terms of this Settlement Agreement, shall be bound by all of its terms, including those pertaining to the Release, as well as any judgment that may be entered by the Court after it grants Final Approval of the Settlement.

65.   Certification Reports Regarding Requests for Exclusion and Disputes. The Settlement Administrator shall provide Defendants' Counsel and Class Counsel a weekly report which certifies: (a) the number of Class Members who have submitted a valid or defective letter requesting exclusion from, *i.e.*, to opt-out of, the Settlement; (b) whether any Class Member has submitted a challenge to any

information contained in their Notice of Settlement; and (c) the number of returned, undeliverable and/or re-mailed Notice of Settlements. Additionally, the Settlement Administrator will provide to counsel for both Parties any updated reports regarding the administration of the Settlement Agreement as needed or requested.

66.    <u>Individual Settlement Share Calculations</u>. The Settlement Administrator shall determine the eligibility for, and the amounts of, any Individual Settlement Shares or Payments that Participating Class Members may receive under the terms of this Settlement Agreement. Should any question arise regarding the determination of eligibility for participation in the Settlement or the amount of any Individual Settlement Payment under the terms of this Settlement Agreement, Class Counsel and Defendants' Counsel will meet and confer in good faith in an attempt to reach an agreement. Any unresolved disputes concerning the administration of the Settlement Agreement will be resolved by the Court, under the laws of the State of California.

a.    Each Class Member who does not timely request to opt-out will receive a share of the remaining Net Fund Value ("Individual Settlement Share"), less the employee's withholdings and taxes associated with the wage portion of the Individual Settlement Shares, based on the number of Qualifying Workweeks a Class Member was employed by, and performed work for, Defendants in an exempt Client Service Manager Position in California at any time from July 18, 2014 to the earlier of the date of Preliminary Approval or December 31, 2020, excluding weeks when the Class Member was on leave for the entire week. Specific calculations of Individual Settlement Shares shall be made as follows:

i.    The Settlement Administrator shall calculate the total aggregate number of Qualifying Workweeks that all Class Members were employed by, and performed work for, Defendants in an exempt Client Service Manager Position in California at any time from July 18, 2014 to the earlier of the date of Preliminary Approval or December 31,

1   2020, excluding weeks when Class Members were on leave for the

2   entire week ("Total Workweeks").

3      ii.  The value of each individual Qualifying Workweek shall

4   then be determined by dividing the proceeds of the Net Fund Value by

5   the Total Workweeks, resulting in the "Workweek Value." Each

6   Individual Settlement Share shall then be determined by multiplying the

7   individual Participating Class Member's number of Qualifying

8   Workweeks by the Workweek Value.

9      iii.  If any Class Members submit timely and valid Requests for

10   Exclusion, the Settlement Administrator shall reallocate their Individual

11   Settlement Payment amounts to the Net Fund Value for distribution to

12   Participating Class Members pursuant to the terms of this Settlement

13   Agreement. The Settlement Administrator shall provide the final

14   Individual Settlement Payment calculations to Defendants only (except

15   as set forth in Paragraph 63). The Settlement Administrator shall

16   withhold any legally mandated withholdings or deductions (*e.g.*, payroll

17   taxes, etc.) from the Individual Settlement Payment for each

18   Participating Class Member and remit tax withholdings to the applicable

19   tax authorities.

20     67. <u>Allocation of Individual Settlement Shares</u>. One-third of each Individual

21   Settlement Share shall be allocated as wages and two-thirds of each Individual

22   Settlement Share shall be allocated as penalties and interest. Individual Settlement

23   Shares will be paid out to Participating Class Members subject to reduction for all

24   employee's share of withholdings and taxes associated with the wage-portion of the

25   Individual Settlement Shares.

26

27

28

68.     <u>PAGA Settlement Share Calculations</u>. Each PAGA Representative Class Member, regardless of whether he or she timely requests to opt-out, will receive a portion of the PAGA Settlement Share allocated on a per capita basis. Specific calculations of the PAGA Settlement Shares shall be made by dividing 25 percent of the PAGA Payment ($2,500.00) by the total number of PAGA Representative Class Members.

69.     <u>Payment of Settlement Amounts</u>. The Settlement Administrator shall have the authority and obligation to make all payments, credits, and disbursements, calculated in accordance with the methodology set out in this Settlement Agreement and orders of the Court.

a.     The Settlement Administrator's duties include, and are not limited to, reporting payments under the Settlement to all required taxing and other authorities, taking and transmitting the appropriate employee's share of withholdings and taxes with respect to the wage-portion of the Individual Settlement Shares, and issuing IRS Forms W-2 and 1099. No person shall have any claim against Defendants, Defendants' Counsel, Plaintiff, Participating Class Members, Class Counsel, or the Settlement Administrator based on distributions and payments made in accordance with this Settlement Agreement.

b.     With respect to Participating Class Members whose Notice of Settlement are undeliverable, as provided in Paragraph 60(c), settlement checks shall be sent to the last address obtained by the Settlement Administrator with respect to the Participating Class Member. If the settlement checks are not negotiated within the timeframe set forth in Paragraph 71, the corresponding funds shall be handled as provided in Paragraph 71.

70.     <u>Distribution Timing</u>. Within thirty (30) calendar days of the Effective Date, the Settlement Administrator shall issue payments to (1) Participating Class

1   Members; (2) Plaintiffs; (3) Class Counsel; and (4) itself, for Court-approved

2   services performed in connection with the Settlement.

3          71.   <u>Non-Negotiated Settlement Checks</u>. Any checks issued by the

4   Settlement Administrator to Participating Class Members shall be negotiable for one

5   hundred and eighty (180) calendar days. Those funds represented by settlement

6   checks returned as undeliverable and the funds which correspond with the settlement

7   checks that are not negotiated within one hundred and eighty (180) calendar days

8   after issuance shall be cancelled and the funds associated with such cancelled

9   checks, plus any accrued interest that has not been distributed, shall, within ten (10)

10  calendar days after the last day of the 180-day period, be tendered by the Settlement

11  Administrator to the State Controller's office as unclaimed property in the name of

12  the Participating Class Member(s) who did not cash the checks.

13         72.   <u>Settlement Administrator's Final Report(s)</u>. Not less than ten

14  (10) calendar days after the Response Deadline, the Settlement Administrator shall

15  provide Defendants' Counsel and Class Counsel a report showing: (i) the names of

16  Participating Class Members; and (ii) the Individual Settlement Payments owed to

17  each Participating Class Member; and (iii) the final number of Class Members who

18  have submitted objections or valid letters requesting exclusion from the Settlement.

19  Upon completion of administration of the Settlement, the Settlement Administrator

20  shall provide written certification of such completion to counsel for all Parties and

21  the Court, if requested by the Parties.

22         73.   <u>Defendants' Right to Revoke</u>. If, after the Response Deadline and before

23  the Final Approval hearing, five percent (5%) or more of the Class Members opt-out,

24  Defendants shall have the right, in their sole discretion, to void and revoke the

25  Settlement Agreement and its stipulation to class certification. Defendants shall have

26  thirty (30) calendar days after the Response Deadline to notify Class Counsel in

27  writing of their intent to revoke the Settlement Agreement and the conditional class

28  certification. If Defendants revoke the Settlement Agreement, they shall pay the fees

1    incurred by the Settlement Administrator to date.

2         74.   <u>Effect of Increase in Workweeks</u>. This Settlement is based on data

3    provided by Defendants, which at the time of mediation showed that, for the period

4    of July 18, 2014 through approximately September 4, 2020, Class Members worked

5    no more than 45,045 workweeks in a Client Service Manager Position in California

6    while classified as exempt. If it is determined that the Qualifying Workweeks

7    through Preliminary Approval or December 31, 2020, whichever is sooner, exceed

8    49,550 (45,045, plus 10% of 45,045), the Gross Settlement Amount will be

9    increased by the same number of percentage points above 10% by which the

10   Qualifying Workweeks exceed 45,045. For instance, if the Qualifying Workweeks

11   are determined to be 12% higher than 45,045, the Gross Settlement Amount will be

12   increased by 2%.

13        75.   <u>Class Release by Participating Class Members</u>. Upon the Final

14   Approval by the Court of this Settlement Agreement and payment of amounts set

15   forth herein, and except as to such rights or claims as may be created by this

16   Settlement Agreement, each and every Participating Class Member, on behalf of

17   themselves and their heirs and assigns, hereby releases Defendants Arthur J.

18   Gallagher & Co. and Arthur J. Gallagher Service Company, LLC, including their

19   current or former parent, subsidiary, or affiliate entities, and each of their owners,

20   officers, directors, members, managers, employees, attorneys, insurers, assigns,

21   shareholders, successors, predecessors, and agents (collectively the "Released

22   Parties") from the following rights or claims (the "Released Class Claims"):

23        a.   Any and all claims that are or could have been alleged in the

24        Complaint, and any amendments thereto, based on and/or related to the factual

25        allegations contained therein. This includes all claims for failing to pay

26        overtime wages because of misclassification (including claims under state law

27        and under the FLSA), failing to provide meal and rest periods and failing to

28        pay related premiums/penalties, failing to furnish accurate itemized wage

1   statements, and waiting time penalties. This covers all claims for unpaid

2   wages or compensation, premium payments, liquidated damages, restitution

3   (including for unfair competition), penalties, attorneys' fees or costs, and/or

4   any other damages or amounts related to any or all of the foregoing.

5        b.    The release includes any and all claims that were or could have

6   been asserted based on or related to the facts and/or allegations in any

7   complaint filed in this action.

8        c.    Participating Class Members shall release the Released Class

9   Claims for the period ending on the earlier of the date of Preliminary Approval

10   or December 31, 2020.

11        76.    PAGA Release by PAGA Representative Class Members:  Upon the

12   Final Approval by the Court of this Settlement Agreement and payment of amounts

13   set forth herein, and except as to such rights or claims as may be created by this

14   Settlement Agreement, each and every PAGA Representative Class Member, on

15   behalf of themselves and their heirs and assigns, and irrespective of whether the

16   PAGA Representative Class Member opted out of the class action portion of this

17   Settlement, hereby releases the Released Parties from the following rights or claims

18   (the "Released PAGA Claims"):

19        a.    Any and all claims for civil penalties under California Labor

20   Code section 2698 *et seq.* ("PAGA") that are or could have been alleged in the

21   Complaint, and any amendments thereto, based on and/or related to the factual

22   allegations contained therein, including California Labor Code sections 201,

23   202, 203, 204, 226, 226.7, 510, 512, 1194, and 1198. This includes all claims

24   under PAGA for failing to pay overtime wages because of misclassification,

25   failing to provide meal and rest periods and failing to pay related

26   premiums/penalties, failing to furnish accurate itemized wage statements, and

27   waiting time penalties. This covers all claims under PAGA for unpaid wages

28   or compensation, premium payments, liquidated damages, restitution

1   (including for unfair competition), penalties, attorneys' fees or costs, and/or

2   any other damages or amounts related to any or all of the foregoing.

3        b.      The release includes any and all claims under PAGA that were or

4   could have been asserted based on or related to the facts and/or allegations in

5   any complaint filed in this action.

6        c.      PAGA Representative Class Members shall release the Released

7   PAGA Claims for the period ending on the earlier of the date of Preliminary

8   Approval or December 31, 2020.

9        77.    <u>General Release by Plaintiffs Only</u>. As of the Effective Date, and with

10  the exceptions set forth herein, Plaintiffs shall release the Released Class Claims and

11  Released PAGA Claims against the Released Parties, and Plaintiffs make the

12  additional following General Release in favor of the Released Parties:

13       a.      Plaintiffs individually unconditionally waive and forever release

14  any and all demands, damages, debts, liabilities, actions, causes of action and

15  claims of every kind and nature whatsoever, whether now known or unknown,

16  suspected or unsuspected, which they ever had or now have against the

17  Released Parties arising or accruing at any time before the Effective Date.

18  Plaintiffs may hereafter discover facts in addition to or different from those

19  which they now know or believe to be true, but stipulate and agree that, upon

20  the Effective Date, they fully, finally, and forever settle and release any and all

21  claims, known or unknown, suspected or unsuspected, contingent or non-

22  contingent, whether or not concealed or hidden, which now exist, or

23  heretofore have existed, upon any theory of law or equity and without regard

24  to the subsequent discovery or existence of such different or additional facts.

25  Plaintiffs are deemed by operation of the order granting Final Approval to

26  have agreed not to sue or otherwise make a claim against any of the Released

27  Parties for any claim arising or accruing at any time before the Effective Date.

28       b.      Plaintiffs acknowledge that they have had the opportunity to

review, and have reviewed, California Civil Code section 1542, which

provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT
THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR
SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF
EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR
HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER
SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Being fully informed of this provision of the Civil Code and

understanding its provisions, Plaintiffs agree to waive any rights under that

section, and acknowledge that this Settlement Agreement and the release

contained herein extends to all claims they have or might have against the

Released Parties, including those which are presently unknown to them.

c.    Notwithstanding the foregoing, this Settlement shall have no

effect on Plaintiff Rubin-Knudsen's workers' compensation settlement with

Defendants.

78.    Plaintiffs' Release of Age Discrimination in Employment Act Claim.

Plaintiffs understand and acknowledge that:

a.    They are voluntarily waiving any and all rights and claims they

have against the Released Parties as of the date they sign this Agreement

arising pursuant to the Age Discrimination in Employment Act, 29 U.S.C.

§§ 623, *et seq.* ("ADEA");

b.    They are waiving these substantive rights or claims pursuant to

this Agreement in exchange for consideration, the value of which exceeds the

payment or remuneration to which they were already entitled;

c.    They are hereby advised in writing to consult with an attorney of

their choosing concerning this Agreement prior to executing it. They further

acknowledge that they had the opportunity to seek and did seek such advice,

and that their execution of this Agreement is voluntary and without coercion;

d.    They have been given at least twenty-one (21) days to consider

the terms of this Agreement, and in the event they should decide to sign this Agreement in fewer than twenty-one (21) days, they have done so with the express understanding that they have been given and declined the opportunity to consider this Agreement for a full twenty-one (21) days;

e.     They may revoke their waiver of claims arising pursuant to the ADEA at any time during the seven (7) days following the date they sign this Agreement. Plaintiffs understand and agree that should they revoke their waiver of claims arising pursuant to the ADEA at any time during the seven (7) days following the date they sign this Agreement, they will receive fifty percent (50%) of their Individual Settlement Payments and Class Representative Enhancement payments – and that such amount will be the consideration for a release of all their rights and claims addressed in this Agreement, except any claims they may have pursuant to the ADEA. Plaintiffs further understand and agree that should they not revoke her waiver of claims arising pursuant to the ADEA during the seven (7) days following the date they sign this Agreement, they will receive one hundred percent (100%) of their Individual Settlement Payments – and that such amount will be consideration for the release of all their rights and claims addressed in this Agreement, including any claims they may have pursuant to the ADEA; and

f.     Any revocation must be in writing and delivered by hand, certified mail, or Federal Express with signature required, to Winston & Strawn LLP, Attn: Joan Fife, 101 California Street, 35th Floor, San Francisco, CA 94111;

g.     Any changes to this Agreement, whether material or immaterial, do not restart the twenty-one-day (21-day) consideration period.

79.     <u>Final Approval Hearing and Entry of Judgment</u>. Upon expiration of the deadlines to postmark a letter requesting exclusion from the Settlement, or objections to the Settlement Agreement, and with the Court's permission, a Final

Approval hearing shall be conducted to finally determine the fairness of the
Settlement, along with the amounts properly payable for (a) Individual Settlement
Payments; (b) the PAGA Payment; (c) the Award of Class Counsel Fees and Class
Counsel Expenses; (d) the Class Representative Enhancement payments; and (e) all
Settlement Administration Costs. Plaintiffs' Counsel will be responsible for drafting
the attorneys' fees and costs application to be heard at the Final Approval hearing.

80.    <u>Judgment and Continued Jurisdiction</u>. Upon Final Approval of the
Settlement by the Court or after the Final Approval hearing, the Parties shall present
a proposed judgment to the Court for its approval. After entry of the judgment, the
Court shall retain jurisdiction solely for purposes of addressing: (a) the interpretation
and enforcement of the terms of the Settlement, (b) Settlement administration
matters, and (c) such post-judgment matters as may be appropriate under Court rules
or as set forth in this Settlement Agreement.

81.    <u>No Solicitation of Settlement Objections or Exclusions</u>. The Parties
agree to use their best efforts to carry out the terms of this Settlement Agreement. At
no time shall any of the Parties or their counsel seek to solicit or otherwise
encourage Class Members to submit either a letter requesting exclusion from the
Settlement or written objections to the Settlement Agreement or to appeal from the
Court's final judgment.

82.    <u>Nullification of Settlement Agreement</u>. In the event: (i) Defendants
rescind this Settlement Agreement as set forth herein; (ii) the Court does not finally
approve the Settlement as provided herein; (iii) the Court does not enter a final
judgment as provided herein, which becomes final as a result of the occurrence of
the Effective Date; or (iv) the Settlement does not become final for any other reason,
this Settlement Agreement shall be null and void and any order or judgment entered
by the Court in furtherance of this Settlement shall be treated as void from the
beginning. In such a case, the Parties shall be returned to their respective statuses as
of the date and time immediately prior to the execution of this Settlement Agreement

and the Parties shall proceed in all respects as if this Settlement Agreement had not been executed. In the event an appeal is filed from the Court's final judgment, or any other appellate review is sought prior to the Effective Date, administration of the Settlement shall be stayed pending final resolution of the appeal or other appellate review (unless otherwise agreed to by the Parties).

83.   <u>No Admission.</u> Nothing contained herein, nor the consummation of this Settlement Agreement, is to be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Defendants or any of the other Released Parties. Each of the Parties hereto has entered into this Settlement Agreement with the intention of avoiding further disputes and litigation with the attendant inconvenience and expenses. This Settlement Agreement is a settlement document and, pursuant to California Evidence Code section 1152 and/or Federal Rule of Evidence 408 and/or any other similar law, shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve the Settlement, and/or interpret or enforce this Settlement Agreement.

84.   <u>Notices.</u> Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, or upon receipt if sent by Federal Express with signature required, addressed as follows:

| **To Class Counsel:** | **To Defendants' Counsel:** |
|---|---|
| Jason M. Frank | Joan B. Tucker Fife |
| Scott H. Sims | Caitlin W. Tran |
| FRANK SIMS STOLPER, LLP | WINSTON & STRAWN LLP |
| 19800 MacArthur Blvd., Suite 855 | 101 California Street, 35th Floor |
| Irvine, CA 92612 | San Francisco, CA 94111 |

A courtesy copy of any Notice given by the parties shall also be sent by e-mail to Class Counsel and Defendants' Counsel.

85.   <u>Tax Liability.</u> The Parties make no representations as to the tax

treatment or legal effect of the payments called for hereunder, and Participating

Class Members are not relying on any statement or representation by the Parties in

this regard. Defendants shall pay any amounts owed for employer-side payroll taxes,

separate and apart from the Gross Settlement Amount. Each Participating Class

Member shall be solely responsible for any and all additional federal, state, and local

taxes and/or penalties that may be due from payment of any Individual Settlement

Payment made to him/her, whether it is determined that any additional taxes are

owed based on the taxation laws in effect on the date of execution of this Agreement

or that may become due at any time in the future because of a change to the laws

governing the taxation of such settlement proceeds. Each Participating Class

Member will hold the Parties and their Counsel free and harmless from and against

any claims resulting from the treatment of such payments as non-taxable damages,

including the treatment of such payment as not subject to withholding or deduction

for payroll and employment taxes. Each Party to this Agreement acknowledges and

agrees that no provision of this Agreement, and no written communication or

disclosure between or among the Parties or their attorneys and other advisers, is or

was intended to constitute or be construed or be relied upon as, tax advice.

86. **Exhibits and Headings**. The terms of this Agreement include the terms
set forth in any attached Exhibits, which are incorporated by this reference as though
fully set forth herein. Any Exhibits to this Agreement are an integral part of the
Settlement. The descriptive headings of any paragraphs or sections of this
Agreement are inserted for convenience of reference only and do not constitute a
part of this Agreement.

87. **Amendment or Modification**. Unless otherwise provided herein, this
Settlement Agreement may be amended or modified only by a written instrument
signed by counsel for all Parties or their successors-in-interest.

88. **Entire Agreement**. This Settlement Agreement, any supplemental
written agreement subsequently incorporated, and any attached Exhibits constitute

the entire Settlement Agreement among these Parties, and no oral or written representations, warranties or inducements have been made to any party concerning this Settlement Agreement or its Exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.

89.   <u>Authorization to Enter Into Settlement Agreement</u>. The signatories hereto represent that they are fully authorized to enter into this Settlement Agreement and bind the Parties hereto to the terms and conditions hereof.

90.   <u>Opportunity to Consult With Counsel</u>. The Parties are represented by competent counsel, and have had an opportunity to consult with counsel prior to the execution of this Settlement Agreement.

91.   <u>Mutual Full Cooperation</u>. The Parties and their counsel will cooperate with each other and use their best efforts to affect the implementation of the Settlement. In the event the Parties are unable to reach agreement on the form or content of any document needed to implement the Settlement, or on any supplemental provisions that may become necessary to effectuate the terms of this Settlement, the Parties may seek the assistance of the Court to resolve such disagreement.

92.   <u>Binding on Successors and Assigns</u>. This Settlement Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators and successors. The Parties hereto represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or rights herein released and discharged except as set forth herein.

93.   <u>Participating Class Member Signatories</u>. It is agreed that because the Participating Class Members are so numerous, it is impossible or impractical to have each Participating Class Member execute this Settlement Agreement. The Notices of Settlement will advise all Class Members of the binding nature of the release and,

1  upon Final Approval, such shall have the same force and effect as if this Settlement

2  Agreement were executed by each Participating Class Member.

3      94.   California Law Governs. All terms of this Settlement Agreement and

4  the Exhibits hereto shall be governed by and interpreted according to the laws of the

5  State of California.

6      95.   Counterparts. This Settlement Agreement may be executed in one or

7  more counterparts. All executed counterparts and each of them shall be deemed to be

8  one and the same instrument provided that counsel for the Parties to this Settlement

9  Agreement shall exchange among themselves original signed counterparts.

10     96.   Plaintiffs' Waiver of Right to be Excluded. Plaintiffs agree that by

11  signing this Settlement Agreement, they are bound by the terms herein stated and

12  further agree not to request to be excluded from the Class.

13     97.   Confidentiality Preceding Preliminary Approval. Consistent with the

14  Federal Rules of Evidence and to the extent applicable, California Evidence Code

15  Sections 1115-1129, Plaintiffs and Class Counsel agree that information exchanged

16  during settlement negotiations and leading up to this Settlement shall remain

17  confidential. Plaintiffs and Class Counsel agree that they will not file a press release

18  regarding this Settlement, except that Class Counsel will include references to the

19  Settlement on their website.

20     98.   Disposition of Data. The Parties expressly agree that all confidential

21  data and information shared by the Parties in this litigation and in the negotiations

22  leading up to this Settlement shall be handled pursuant to the terms of the Protective

23  Order issued in this Action.

24

25  Dated: ~~October~~ November 9 ——, 2020

26                                Pamela Rubin-Knudsen

27

28  Dated: October ___, 2020

                                Marnine Casillas

32
STIPULATION OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT AND RELEASE

upon Final Approval, such shall have the same force and effect as if this Settlement Agreement were executed by each Participating Class Member.

94.     California Law Governs. All terms of this Settlement Agreement and the Exhibits hereto shall be governed by and interpreted according to the laws of the State of California.

95.     Counterparts. This Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Settlement Agreement shall exchange among themselves original signed counterparts.

96.     Plaintiffs' Waiver of Right to be Excluded. Plaintiffs agree that by signing this Settlement Agreement, they are bound by the terms herein stated and further agree not to request to be excluded from the Class.

97.     Confidentiality Preceding Preliminary Approval. Consistent with the Federal Rules of Evidence and to the extent applicable, California Evidence Code Sections 1115-1129, Plaintiffs and Class Counsel agree that information exchanged during settlement negotiations and leading up to this Settlement shall remain confidential. Plaintiffs and Class Counsel agree that they will not file a press release regarding this Settlement, except that Class Counsel will include references to the Settlement on their website.

98.     Disposition of Data. The Parties expressly agree that all confidential data and information shared by the Parties in this litigation and in the negotiations leading up to this Settlement shall be handled pursuant to the terms of the Protective Order issued in this Action.

Dated: October ___, 2020      _____
                                Pamela Rubin-Knudsen

Dated: October _31__, 2020     _Marnine Casillas_____
                                Marnine Casillas

this Settlement Agreement, they are bound by the terms herein stated and further agree
not to request to be excluded from the Class.

97. Confidentiality Preceding Preliminary Approval. Consistent with the Federal
Rules of Evidence and to the extent applicable, California Evidence Code Sections
1115-1129, Plaintiffs and Class Counsel agree that information exchanged during
settlement negotiations and leading up to this Settlement shall remain confidential.
Plaintiffs and Class Counsel agree that they will not file a press release regarding this
Settlement, except that Class Counsel will include references to the Settlement on
their website.

98. Disposition of Data. The Parties expressly agree that all confidential data
and information shared by the Parties in this litigation and in the negotiations leading
up to this Settlement shall be handled pursuant to the terms of the Protective Order
issued in this Action.

Dated: October ____, 2020    _____
                             Pamela Rubin-Knudsen


Dated: October ____, 2020    _____
                             Marnine Casillas


                             ARTHUR J. GALLAGHER & CO. and ARTHUR J.
                             GALLAGHER SERVICE COMPANY, LLC

         Dated: October a7 M    _____
2020     _____
                             By: Neil Murphy
                             Its: Chief Litigation Counsel


APPROVED AS TO FORM:         WINSTON & STRAWN LLP

Dated: October ____, 2020    By: _____
                             Joan B. Tucker Fife

                             Emilie C. Woodhead

                             Caitlin W. Tran

                             Gabriella R. Albright

                             Stephen V. D'Amore (admitted *pro hac vice*)

                             Attorneys for Defendants
                             ARTHUR J. GALLAGHER & CO. and ARTHUR J.
                             GALLAGHER SERVICE COMPANY, LLC



Dated: October ____, 2020    FRANK SIMS & STOLPER LLP



                             By: _____

1
2

ARTHUR J. GALLAGHER & CO. and ARTHUR J.
GALLAGHER SERVICE COMPANY, LLC

3   Dated: October ___, 2020

4   _____
    By: Neil Murphy
    Its: Chief Litigation Counsel

5

6   APPROVED AS TO FORM:      WINSTON & STRAWN LLP

7   Dated: November 9, 2020   By: _____

8                             Joan B. Tucker Fife
                              Emilie C. Woodhead
9                             Caitlin W. Tran
                              Gabriella R. Albright
10                            Stephen V. D'Amore (admitted *pro hac vice*)
                              Attorneys for Defendants
11                            ARTHUR J. GALLAGHER & CO. and ARTHUR J.
                              GALLAGHER SERVICE COMPANY, LLC

12

13  Dated: ~~October~~ 11/9, 2020   FRANK SIMS & STOLPER LLP

14                                  By: _____

15                                  Jason M. Frank
                                    Scott H. Sims
16                                  Attorneys for Plaintiffs
                                    PAMELA RUBIN-KNUDSEN and
17                                  MARNINE CASILLAS

18
19
20
21
22
23
24
25
26
27
28

                                33